1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RONALD DIXON,                          Case No. 2:24-cv-03252-TLN-CSK

12              Plaintiff,                   RECOMMENDATIONS ON PARTIES'
                                             CROSS MOTIONS FOR SUMMARY
13       v.                                  JUDGMENT

14   COMMISSIONER OF SOCIAL                  (ECF Nos. 12, 14)
     SECURITY,
15
                Defendant.
16

17          Plaintiff Ronald Dixon seeks judicial review of a final decision by Defendant

18   Commissioner of Social Security denying an application for disability insurance benefits,

19   and supplemental security income.[1] In the summary judgment motion, Plaintiff contends

20   the final decision of the Commissioner contains legal error and is not supported by

21   substantial evidence. Plaintiff seeks a remand for further proceedings. The

22   Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment,

23   and seeks affirmance.

24          For the reasons below, Plaintiff's motion should be GRANTED, the

25   Commissioner's cross-motion should be DENIED, and the final decision of the

26   Commissioner should be REVERSED AND REMANDED for further proceedings.

27   _____

28   [1]  This action was referred to the magistrate judge under Local Rule 302(c)(15) for the
     issuance of findings and recommendations. *See* Local Rule 304.

                                            1

1    **I.        SOCIAL SECURITY CASES:  FRAMEWORK & FIVE-STEP ANALYSIS**

2              The Social Security Act provides benefits for qualifying individuals unable to

3    "engage in any substantial gainful activity by reason of any medically determinable

4    physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the

5    "claimant") seeks Social Security disability benefits, the process for administratively

6    reviewing the request can consist of several stages, including: (1) an initial determination

7    by the Social Security Administration; (2) reconsideration; (3) a hearing before an

8    Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the

9    Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

10             At the hearing stage, the ALJ is to hear testimony from the claimant and other

11   witnesses, accept into evidence relevant documents, and issue a written decision based

12   on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In

13   evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

14             **Step One**: Is the claimant engaged in substantial gainful activity? If yes,
                the claimant is not disabled. If no, proceed to step two.

15             **Step Two**: Does the claimant have a "severe" impairment? If no, the
16             claimant is not disabled. If yes, proceed to step three.

               **Step Three**: Does the claimant's combination of impairments meet or
17             equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")?
               If yes, the claimant is disabled. If no, proceed to step four.
18
               **Step Four**: Is the claimant capable of performing past relevant work? If
19             yes, the claimant is not disabled. If no, proceed to step five.

20             **Step Five**: Does the claimant have the residual functional capacity to
               perform any other work? If yes, the claimant is not disabled. If no, the
21             claimant is disabled.

22   *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4),

23   416.920(a)(4). The burden of proof rests with the claimant through step four, and with

24   the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If

25   the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines

26   review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v.*

27   *Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of

28   review is a non-final agency action). At that point, the claimant may seek judicial review

1  of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

2       The district court may enter a judgment affirming, modifying, or reversing the final

3  decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial

4  review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has

5  repeatedly admonished that the court cannot manufacture arguments for the plaintiff.

6  *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep.*

7  *Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court

8  should "review only issues which are argued specifically and distinctly," and noting a

9  party who fails to raise and explain a claim of error waives it).

10      A district court may reverse the Commissioner's denial of benefits only if the ALJ's

11  decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d.

12  at 1154. Substantial evidence is "more than a mere scintilla" but "less than a

13  preponderance," i.e., "such relevant evidence as a reasonable mind might accept as

14  adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in

15  the record that both supports and detracts from the ALJ's conclusion, but may not affirm

16  on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th

17  Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in

18  testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision

19  must be upheld where the evidence is susceptible to more than one rational

20  interpretation, or where any error is harmless. *Id.*

21  **II.    FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS**

22      On June 17, 2021 and June 20, 2021, Plaintiff applied for period of disability and

23  disability insurance benefits and supplemental security income under Titles II and XVI of

24  the Social Security Act, alleging she has been disabled since June 26, 2019.

25  Administrative Transcript ("AT") 73-74, 95 (available at ECF No. 11). Plaintiff claimed

26  disability due to schizophrenia, bipolar disorder, depression, anxiety disorder, post-

27  traumatic stress disorder ("PTSD"), hallucinations, "mania," and "borderline." *See* AT 74.

28  Plaintiff's applications were denied initially and upon reconsideration; she sought review

1    before an ALJ. *See* AT 73-161, 187. Plaintiff appeared with a representative at a July 10,

2    2023 hearing before an ALJ, where Plaintiff testified about her impairments and a

3    vocational expert testified about hypothetical available jobs in the national economy. AT

4    45-68.

5         On August 2, 2023, the ALJ issued a decision finding Plaintiff was not disabled.

6    AT 25-39. At step one, the ALJ found Plaintiff had not engaged in substantial gainful

7    activity since June 26, 2019. AT 27. At step two, the ALJ determined Plaintiff had the

8    following severe impairments:  bipolar disorder, anxiety disorder, and polysubstance

9    dependence disorder. AT 28. At step three, the ALJ found Plaintiff's combination of

10   impairments did not meet or medically equal any Listing. *Id.* (citing 20 C.F.R Part 404,

11   Subpart P, Appendix 1). Relevant here, the ALJ considered Listings 12.03

12   (schizophrenia spectrum and other psychotic disorders); 12.04 (depression); and 12.06

13   (anxiety) for Plaintiff's mental impairments, examining the "Paragraph B" criteria for the

14   mental impairments.[2] The ALJ found Plaintiff moderately limited in understanding,

15   remembering, or applying information, in interacting with others, in concentrating,

16   persisting or maintaining pace, and in adapting or managing oneself. AT 28-29.

17        The ALJ then found Plaintiff had the residual functional capacity to perform a full

18   range of work at all exertional levels, but with the following nonexertional limitations:

19            [L]imited to routine and repetitive tasks; able to work in a low
             stress job, defined as having only occasional decision making
20            required and only occasional changes in the work setting; no
             interaction with the public and only occasional interaction with
21            co-workers and supervisors.

22   AT 30. In crafting this residual functional capacity, the ALJ stated she considered

23   Plaintiff's symptom testimony, the objective medical evidence, other evidence, and

24

25   [2]   "Paragraph B" lists four categories for evaluating how a claimant's mental disorders
     limit their functioning:  understanding, remembering, or applying information; interacting
26   with others; concentrating, persisting, or maintaining pace; and adapting or managing
     oneself. To be found disabled under the Paragraph B categories, the mental disorder
27   must result in an "extreme" limitation of one, or "marked" limitation of two, of the four
     areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental
28   Disorders, sub. A.2.b.

1   medical opinion evidence. *Id.*

2          Based on the residual functional capacity, the ALJ determined at step four that

3   Plaintiff was incapable of performing past relevant work. AT 37. However, at step five,

4   the ALJ found Plaintiff capable of performing other jobs in the national economy,

5   including:  (i) cleaner housekeeper, light, unskilled, SVP 2, with approximately 137,000

6   jobs nationally; (ii) small products assembler, light, unskilled, SVP 2, with approximately

7   100,000 jobs nationally; and (iii) machine tender, light, unskilled, SVP 2, with

8   approximately 7,000 jobs nationally.[3] AT 38. Thus, the ALJ found Plaintiff not disabled

9   during the relevant period. *Id.*

10          On January 26, 2024, the Appeals Council rejected Plaintiff's appeal. AT 9-14.

11   Plaintiff filed this action requesting judicial review of the Commissioner's final decision,

12   and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 12, 14.)

13   **III.    ISSUES PRESENTED FOR REVIEW**

14          Plaintiff contends the ALJ erred by:  (A) improperly analyzing Plaintiff's subjective

15   symptom testimony; (B) failing to perform the required drug abuse analysis; and (C) not

16   including any restriction from one of the four broad areas with a moderate limitation in

17   the residual functional capacity. Plaintiff seeks a remand for further proceedings. (ECF

18   Nos. 12, 15.)

19          The Commissioner argues:  (A) the ALJ reasonably found not all Plaintiff's

20   symptom testimony was consistent with the record; (B) the ALJ was not required to

21   perform a Drug and Alcohol Abuse analysis in this situation; and (C) substantial

22   evidence supports the residual functional capacity. Def. MSJ (ECF No. 14.) Thus, the

23   Commissioner contends the decision as a whole is supported by substantial evidence

24   and should be affirmed. *Id.*

25   _____

26   [3]  "Light" in the ALJ's step-five determination references light work, as defined by
20 C.F.R. §§ 404.1567(b) and 416.967(b).

27          "SVP" is "specific vocational preparation," defined as "the amount of lapsed time
required by a typical worker to learn the techniques, acquire the information, and
develop the facility needed for average performance in a specific job-worker situation."

28   *See* DOT, App. C, § II, available at 1991 WL 688702.

## IV.   DISCUSSION

### A.   Subjective Symptom Testimony

Plaintiff argues the ALJ erred by improperly analyzing Plaintiff's subjective symptom testimony. Pl. MSJ at 3-9 (ECF No. 12).

#### 1.   Legal Standards

A claimant's statements of subjective symptoms alone are insufficient grounds to establish disability. 20 C.F.R §§ 404.1529(a), 416.929(a). If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose. *Treichler v. Comm'r,* 775 F.3d 1090, 1106 (9th Cir. 2014). In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quotations omitted). The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be sufficiently specific to allow a reviewing court to conclude the adjudicator did not arbitrarily discredit a claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quotations omitted). Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: prescription of conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir.

1   2007); inconsistencies between the plaintiff's testimony and conduct (including daily

2   activities), *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); whether the alleged

3   symptoms are consistent with the medical evidence of record, *Rollins v. Massanari*, 261

4   F.3d 853, 857 (9th Cir. 2001); an unexplained or inadequately explained failure to follow

5   a prescribed course of treatment, *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991);

6   or prior inconsistent statements by the plaintiff, *Fair v. Bowen*, 885 F.2d 597, 604 n.5

7   (9th Cir. 1989). A lack of corroborating, objective medical evidence alone is insufficient

8   grounds for an ALJ to discount subjective symptoms; however, it is a factor the ALJ may

9   consider. *Rollins*, 261 F.3d at 857 (citing 20 C.F.R § 404.1529(c)(2)).

10                  2.      Symptom Testimony re: Mental Impairments

11           Regarding Plaintiff's statements alleging disability due to various mental

12   impairments, the ALJ began by summarizing Plaintiff's statements from the 2023 hearing

13   and Plaintiff's written submissions. AT 30. At the July 2023 hearing, Plaintiff stated that

14   he had schizophrenia, bipolar disorder, general anxiety disorder, sciatica, and asthma

15   that affected his ability to work. AT 50. Plaintiff stated that he was taking medications for

16   these conditions, including Varylar, lithium, and Buspar, but that he has side effects

17   including dizziness, headaches, sleeping excessively, and uncontrolled muscle

18   movements. *See* AT 50-51. Plaintiff's symptoms include paranoia, auditory

19   hallucinations, rapid mood swings, and panic. AT 51. The auditory hallucinations prevent

20   Plaintiff from focusing his attention in his personal life and at work when he is trying to

21   help someone. AT 51. Plaintiff states he hears a chirping sound daily that he believes

22   causes delusional thinking. *Id.*

23           Plaintiff testified he worked part-time at Home Depot doing personal shopping for

24   customers, and that he was not compliant with certain things like attendance, work

25   product, or the number of tasks he was expected to perform in a day. AT 52. Plaintiff's

26   symptoms caused him to feel confused and angry at work, which was giving the

27   impression that he was angry at a customer. AT 52-53. Plaintiff also stated he worked for

28   the State of California, but resigned because he had a mental breakdown. AT 54.

Plaintiff experiences panic every couple of days for about ten minutes at a time during stressful situations. AT 53. Plaintiff also experienced delusional thinking which "impeded [his] thoughts" and caused his coworkers to have to do his work. AT 55. Plaintiff states he does not drive because he does not have a car and he is scared to drive at night due to his delusions. AT 57.

Plaintiff discussed the side effects of his medication, including excessive or too little sleep, weight gain, trembling, sweats, dizziness, headaches, and nausea. AT 56. Plaintiff also testified that some of the medication he takes helped with his symptoms by stopping some of his delusional thinking or hearing voices. AT 59. Plaintiff had recently changed medication before the hearing, and indicated that two months prior he was trying a specific mood stabilizer but nothing was working and he was experiencing side effects. AT 59. Plaintiff described mood swings where he would be depressed for days at a time and could not do anything, he would start crying and could not stop, or he would have a lot of energy. AT 60-61.

Plaintiff lives in a "board and care" facility in Sacramento that was arranged by a mental health program, and stated he does not cook or clean there. AT 57. Plaintiff has family but does not reside with them because they do not understand him and are sometimes afraid of him. *Id.*

Plaintiff also stated he had a history of alcohol abuse and last used alcohol on October 13, 2023 but was sober for four and a half years before that. AT 58.

The ALJ also considered Plaintiff's written submissions, and cited an April 8, 2022 function report. *See* AT 353-63. From the Court's review of this document, much of the text is illegible. From what the Court can discern, Plaintiff stated he does the dishes and laundry, he goes outside every day, he shops in stores, by mail, and by computer. AT 358-59. He does not pay bills because he is "terrible with money." AT 359. Plaintiff enjoys spending time with family and friends, walking, shopping, and going to the movies. AT 360. Plaintiff talks to his family daily. *Id.*

The ALJ found Plaintiff's "medically determinable impairments could reasonably

8

be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AT 31. The ALJ appears to have relied on the objective medical evidence, effective treatment, noncompliance with treatment, and Plaintiff's daily activities to support this conclusion. AT 31-35. Because the ALJ found Plaintiff's medically determinable impairments could reasonably cause the alleged symptoms, the ALJ must provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony about the severity of his symptoms. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).

The ALJ provided an extensive review of the objective medical evidence. AT 31-35. The ALJ noted that in September 2019, Plaintiff presented to the hospital with complaints of suicidal ideation, and was depressed, withdrawn, and paranoid. AT 461. Plaintiff had a history of bipolar disorder, but had not taken medication for two years. *Id.* During the hospitalization, Plaintiff was compliant with his medications; taking Seroquel, Wellbutrin, and Ativan. *Id.* Upon discharge, Plaintiff presented with fair hygiene and grooming, calm and cooperative, good eye contact, no psychomotor abnormalities, normal speech, linear though process, had a good mood, and bright, fair range, and smiling affect. AT 462. In February 2020, Plaintiff presented to the emergency department for alcohol withdrawal symptoms. AT 527. Plaintiff reportedly had not been taking his medication for several months. *Id.* During an April 2020 follow up, Plaintiff reported doing well and had not had any alcohol since his emergency department visit. *Id.* Plaintiff reported taking his medications and requested refills. *Id.*

In April 2020, Plaintiff reported depressive symptoms, sleeping 10-12 hours a day, overeating, low energy, low mood, and recent stressors including a new job. AT 522. Plaintiff denied mania and elevated mood/activity. *Id.* In July 2020, Plaintiff reported experiencing panic attacks after being assaulted two weeks prior. AT 515-16. Plaintiff reported being clean from alcohol for 6 months and his psychiatric symptoms were

negative for depression, hallucinations, memory loss, substance abuse, and suicidal ideation. AT 516. A mental status exam indicated Plaintiff was nervous, anxious and worried but was otherwise normal. AT 517.

In August 2020, Plaintiff stopped drinking alcohol and using substances for 14 days. AT 509. Plaintiff was going through acute withdrawal and was prescribed Naltrexone. AT 511. Plaintiff was nervous, indifferent, apathetic, had ruminations, and was restless. AT 510-11. In September 2020, Plaintiff reported being sober and continued to attend Alcoholics Anonymous ("AA") meetings. AT 506. Plaintiff reported crying almost every day, extremely fast concentration, and risky behavior. *Id.* He sometimes feels his "senses are on fire" but reports that his sleep is fine. *Id.* He reported thoughts of worthlessness, but did not believe he needed a mood stabilizer. *Id.* In November 2020, Plaintiff reported he had not been taking medications, and denied hypomanic symptoms and risky behavior. AT 496. Plaintiff had short episodes of depression lasting about one hour followed by a happy mood for most of the day. *Id.*

In May 2021, Plaintiff presented as slightly disheveled in street clothes, had limited engagement with distractibility, increased rate of speech, varying eye contact, dysthymic mood with paranoid/guarded affect, and disorganized. AT 489. Plaintiff vaguely endorsed suicidal, homicidal ideation, and positive perceptual disturbances. *Id.* Plaintiff was not currently taking any medications. *Id.* In June 2021, Plaintiff reported being homeless and was "couch surfing" with friends. AT 553. Plaintiff was accepted to the Sacramento Turning Point Community Program. *See* AT 481. In September 2021, Plaintiff was hospitalized for suicidal ideation, and was homeless at the time. AT 854. Plaintiff was not compliant with his medication but was started on medication once he was admitted. AT 856. Upon discharge, Plaintiff was calm and cooperative, he denied suicidal or homicidal ideation, denied auditory or visual hallucinations, and was fully alert, oriented, and answering questions. AT 849. Plaintiff noted improvement in symptoms since starting medications. AT 901.

In October 2021, Plaintiff indicated he felt his medication was working. AT 942.

Plaintiff also indicated that when he feels better he tends to stop taking his medication. AT 913. Plaintiff was alert and oriented, he spoke with clear speech articulation, had fair mood, normal affect, denied suicidal and homicidal ideation, had adequate attention, concentration, and poor memory for recently learned information. AT 915. In December 2021, Plaintiff was discharged from his program and did not want to get an Invega prescription. AT 936. Plaintiff reported some increase in auditory hallucinations but no suicidal/homicidal ideation. *Id.* A mental status exam was normal. AT 937. In January 2022, a medical report indicated Plaintiff had multiple psychiatric hospitalizations from July 2021 to October 2021, and after he was released from the hospital he started drinking alcohol, smoking methamphetamine and marijuana, which his last usage reportedly being on December 31, 2021 (New Year's Eve). *See* AT 935. In May 2022, Plaintiff presented to the emergency department, and reported that he has a history of committing sexual assault and feels like he wants to do it again. AT 1010. He denied auditory hallucinations, but endorsed meth use. *Id.*

In November 2022, records indicate Plaintiff adhered to his medication and had mostly normal mental status examinations. AT 983-84. In March 2023, Plaintiff underwent a psychiatric evaluation. AT 996-1000. Plaintiff appeared friendly, flat, glum, attentive, communicative but looked unhappy and appeared anxious. AT 998. Plaintiff had signs of moderate depression and blunted affect. *Id.* In April 2023, Plaintiff had been better about complying with his medication and felt his mood was better, but felt overall down and "stuck at sad with anxiety." AT 974.

a.    *Objective Medical Evidence*

Plaintiff first argues the ALJ erred by failing to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony by using "conclusory boilerplate" language and "simply summariz[ing] the medical evidence at issue in the case" and "ma[king] a generalized statement that the record undermines the claimant's testimony." *See* Pl. MSJ at 5-6. Plaintiff cites to *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020) in support. *See id.* at 3-8. In *Lambert*, the Ninth Circuit found that the "boilerplate

11

statement" that is routinely used as an introductory remark in ALJ decisions denying benefits did not identify what parts of the plaintiff's testimony were not credible and why. 980 F.3d at 1277. The court in *Lambert* made clear that the ALJ is not required to perform a "line-by-line" analysis of the plaintiff's testimony, but the ALJ must do more than offer non-specific conclusions that the plaintiff's testimony was inconsistent with his medical treatment. *Id.* Providing a summary of the medical evidence is not the same as providing clear and convincing reasons for finding the Plaintiff's testimony not credible. *Id.*

Plaintiff also argues the ALJ summarized Plaintiff's subjective testimony but never referred to those specific statements and did not state which were credible or not credible. Pl. MSJ at 6. Defendant argues the ALJ reasonably rejected Plaintiff's symptom allegations based on inconsistencies with the objective medical evidence. Def. MSJ at 6-7.

Though the ALJ provided a comprehensive review of the objective medical evidence (*see* AT 31-35), the ALJ did not sufficiently identify which subjective testimony by Plaintiff she found not credible and which objective medical evidence contradicted Plaintiff's testimony. *See Lambert*, 980 F.3d at 1277. The ALJ concluded her review of the objective medical evidence with a paragraph beginning with the sentence: "As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent." AT 34. The ALJ discussed how Plaintiff's inpatient hospitalizations were associated with substance use and noncompliance with medication. *Id.* The ALJ also discussed how Plaintiff willfully does not comply with medication management, and how his symptoms are improved when he does comply with his medication. *Id.* The ALJ identified one specific instance where Plaintiff's testimony was inconsistent with the medical evidence, noting that Plaintiff's testimony that he relapsed in 2022 but was sober for 4.5 years before that contradicts the medical evidence showing several relapses during the relevant period. AT 34. However, other than this, the ALJ does not adequately identify which testimony she finds not credible.

1   District courts in this circuit have found that boilerplate, conclusory language like that

2   used in this case does not satisfy the clear and convincing reasons standard. *See*

3   *Senstad v. Comm'r of Soc. Sec.*, 2025 WL 1752290, at *3 (E.D. Cal. June 24, 2025)

4   (collecting cases). Accordingly, the Court concludes that the ALJ did not provide clear

5   and convincing reasons to find Plaintiff's symptom testimony inconsistent with the

6   objective medical evidence.

7         Further, the Court finds that this error is not harmless. "An error is harmless only if

8   it is inconsequential to the ultimate nondisability determination, or if despite the legal

9   error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806

10  F.3d 487, 494 (9th Cir. 2015) (citations and internal quotation marks omitted). The court

11  "cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the

12  ALJ's conclusions." *Id.* at 495. The ALJ's failure to specifically identify which parts of the

13  Plaintiff's testimony or statements were not credible, and then connect those statements

14  to the record of alleged inconsistency prevents the Court from conducting a meaningful

15  judicial review. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("General

16  findings are insufficient; rather, the ALJ must identify what testimony is not credible and

17  what evidence undermines the claimant's complaints." (citation omitted)); *Rios v. Saul*,

18  2020 WL 71080, at *5 (S.D. Cal. Jan. 7, 2020). Because the ALJ did not provide enough

19  reasoning in order for the Court to meaningfully determine whether the ALJ's

20  conclusions were supported by substantial evidence, the Court finds the error is not

21  harmless. *See Lambert*, 980 F.3d at 1278.

22                          *b.    Effective Treatment*

23        The ALJ also discounted Plaintiff's testimony because Plaintiff had improvement

24  with his symptoms when he is complaint with medications. AT 34; *see* AT 31-34. An ALJ

25  may discount a plaintiff's testimony based on effective treatment. *Wellington v. Berryhill*,

26  878 F.3d 867, 876 (9th Cir. 2017); *see Bettis v. Colvin*, 649 F. App'x 390, 391 (9th Cir.

27  2016). The ALJ observed on multiple occasions that Plaintiff's symptoms improved with

28  treatment. AT 31-35. The ALJ noted in September 2019, Plaintiff presented to the

1    hospital with complaints of suicidal ideation, and was depressed, withdrawn, and

2    paranoid, but had not been compliant with his medications for two years. AT 461. After

3    restarting medication, Plaintiff's symptoms improved and stabilized, and Plaintiff had a

4    normal mental status exam on the day of discharge. *Id.* On February 2020, Plaintiff

5    presented to the emergency room for alcohol withdrawal symptoms, and had not been

6    taking his medication for several months. AT 527. At a follow up urgent care visit Plaintiff

7    reported doing well and that he had been taking his medications regularly. *Id.* In April

8    2020, Plaintiff confirmed his symptoms were previously well-controlled by medication. AT

9    522. In September 2020, Plaintiff had been noncompliant with medication and was

10   psychiatrically hospitalized for suicidal ideation with auditory hallucinations. AT 854, 855.

11   Plaintiff was started on Wellbutrin, Seroquel, Gabapentin, and Chantix, and was

12   discharged when his symptoms were under control. AT 849. In October 2021, Plaintiff

13   reported he felt his new medication regimen was working. AT 942. The ALJ properly

14   considered effective treatment as a reason to discount Plaintiff's testimony.

15        Defendant also argues that the ALJ reasonably rejected Plaintiff's symptom

16   allegations based on repeated reports of medication noncompliance. Def. MSJ at 8-9.

17   The ALJ noted multiple instances where Plaintiff was noncompliant with his medication.

18   *See* AT 500, 525, 855, 856, 974. Noncompliance with a prescribed course of treatment

19   is a permissible reason to discount Plaintiff's symptom testimony. *See Bunnell*, 947 F.2d

20   at 346. Therefore, the ALJ properly considered Plaintiff's noncompliance with a

21   prescribed course of treatment to discount Plaintiff's testimony.

22                              *c.      Daily Activities*

23        Plaintiff also argues that the ALJ improperly used reports of daily activities to

24   discount Plaintiff's testimony. Pl. MSJ at 8-9. Specifically, Plaintiff argues the ALJ did not

25   list any daily activity that directly contradicted any specific testimony. *See id.* at 9.

26   Defendant argues that the court may make inferences from the ALJ's opinion, and that

27   the "ALJ's discussion was sufficiently specific for the Court to draw inferences showing

28   that the evidence contradicted Plaintiff's testimony." Def. MSJ at 10-11.

An ALJ may properly rely on inconsistencies between a plaintiff's testimony and the plaintiff's reported daily activities as a basis for an adverse credibility determination. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). However, an ALJ must "elaborate on which daily activities conflicted with which part of [a plaintiff's] testimony." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis omitted). An ALJ may also consider whether the daily activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities.").

Here, the Court finds that the ALJ's discussion of Plaintiff's daily activities did not sufficiently identify the conflict between Plaintiff's daily activities and Plaintiff's testimony such that the ALJ could use daily activities as a basis to discount Plaintiff's testimony. *See Burrell*, 775 F.3d at 1138. When discussing Plaintiff's daily activities the ALJ stated:

> Mental status examinations showed he had deficits in judgment and disorganized thought process at times. However, he reported his social activities/interests include working when he has stable employment and taking walks around the neighborhood/park. He enjoys cooking and helping people when he can such as doing laundry. He can shop in stores for groceries and necessities.

AT 35 (citations omitted); *see* AT 28-29 (discussing daily activities when analyzing the Paragraph B criteria). The ALJ then referenced reports that Plaintiff likes talking to people and enjoys spending time with family and friends to support a finding that Plaintiff appears capable of occasional contact with coworkers and supervisors. *Id.* The ALJ has not sufficiently shown which daily activities conflict with Plaintiff's symptom testimony. Further, it is not apparent whether the daily activities discussed are transferrable to the workplace, and the ALJ has not made specific findings as to these activities. *See Orn*, 495 F.3d at 639; *Burch*, 400 F.3d at 681. The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from

1  h[is] credibility as to h[is] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th

2  Cir. 2001).

3  **V.    CONCLUSION**

4      With error established, the court has the discretion to remand or reverse and

5  award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be

6  remanded under the "credit-as-true" rule for an award of benefits where:

7      (1) the record has been fully developed and further administrative
       proceedings would serve no useful purpose; (2) the ALJ has failed to
8      provide legally sufficient reasons for rejecting evidence, whether claimant
       testimony or medical opinion; and (3) if the improperly discredited evidence
9      were credited as true, the ALJ would be required to find the claimant
       disabled on remand.

10

11  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for

12  the "credit-as-true" rule are met, the court retains "flexibility to remand for further

13  proceedings when the record as a whole creates serious doubt as to whether the

14  claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021;

15  *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district

16  court concludes that further administrative proceedings would serve no useful purpose, it

17  may not remand with a direction to provide benefits."); *Treichler v. Comm'r of Soc. Sec.*

18  *Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but

19  the record is uncertain and ambiguous, the proper approach is to remand the case to the

20  agency.").

21      Here, the record as a whole creates serious doubt as to whether Plaintiff was, in

22  fact, disabled during the relevant period. On remand, the ALJ is free to develop the

23  record as needed, but must sufficiently analyze Plaintiff's subjective symptom testimony.

24  The Court expresses no opinion regarding how the evidence should ultimately be

25  weighed, and any ambiguities or inconsistencies resolved, on remand. The Court also

26  does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may

27  ultimately find Plaintiff disabled during the entirety of the relevant period; may find

28  Plaintiff eligible for some type of closed period of disability benefits; or may find that

1    Plaintiff was never disabled during the relevant period, provided that the ALJ's

2    determination complies with applicable legal standards and is supported by the record

3    as a whole.

4         Because further proceedings are required, the Court declines to reach the parties'

5    other contentions.

6                              **RECOMMENDATIONS**

7         Accordingly, the Court RECOMMENDS:

8    1.    Plaintiff's motion for summary judgment (ECF No. 12) be GRANTED;

9    2.    The Commissioner's cross-motion (ECF No. 14) be DENIED;

10   3.    The Clerk of the Court enter judgment for Plaintiff; and

11   4.    This matter be remanded for further administrative proceedings consistent with

12         this order.

13   These findings and recommendations are submitted to the United States District Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days

15   after being served with these findings and recommendations, any party may file written

16   objections with the Court and serve a copy on all parties. This document should be

17   captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply

18   to the objections shall be served on all parties and filed with the Court within 14 days

19   after service of the objections. Failure to file objections within the specified time may

20   waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455

21   (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

22

23   Dated:  August 27, 2025

24                                        _____
                                          CHI SOO KIM
25                                        UNITED STATES MAGISTRATE JUDGE

26

27   5, dixo.3252.24

28

                                          17